LUZON B. MORRIS, TRUSTEE, vs. GEORGE B. GRINNELL.

GEORGE B. GRINNELL vs. THE WETMORE MACHINE COMPANY.

The act of 1882 (Session Laws of 1882, ch. 120, sec. 11,) validates all con-
veyances of real estate attested by only one witness, the general statute
requiring two. A statute authorizes the mortgaging of machinery in a
manufacturing establishment, without delivery of possession, where the
mortgage is executed in all respects like conveyances of real estate and
recorded. Held that a mortgage of machinery, made before the act of
1882 was passed, which was attested by only one witness, was validated
by that act.

[Argued December 7th—decided December 27th, 1883.]

Two SUITS, the first brought by the plaintiff, as trustee in
insolvency of the Wetmore Machine Company, to compel
the defendant, Grinnell, to release a mortgage which he
claimed to hold upon the machinery of the company; the
other, brought later, by Grinnell, to foreclose the same
mortgage. Both suits were brought to the Superior Court,
and tried before *Beardsley, J.* Facts found in both cases,
and judgment rendered for the plaintiff in the first case and
for the defendants in the second case. Grinnell, the defeated
party in both cases, appealed in both to this court.

*J. S. Beach*, for the appellant.

*J. W. Alling*, with whom was *L. B. Morris*, for the
appellees.

PARK, C. J. These cases were tried together in the
Superior Court, and were argued together before this court,
and will therefore be considered together.

It appears that on the 25th day of May, 1881, Grinnell
loaned the Wetmore Machine Company the sum of $6,500,
and at the same time took from them in good faith what
was supposed by both parties to be a mortgage of certain

VOL. LI.—31

machinery in their manufacturing establishment, to secure the loan. By inadvertence the instrument was attested by one witness only. It was duly recorded on the records of the town, but the mistake was not discovered until after the company had gone into insolvency on the 3d day of January, 1883, and a trustee in insolvency had been appointed. The estate is in fact insolvent. The trustee had no knowledge of the instrument at the time of his appointment, or of the indebtedness it described; nor did it appear that any creditor of the estate had any such knowledge. The trustee brought a suit to compel Grinnell to release the mortgage on the 4th day of April, 1883; and Grinnell brought a suit to foreclose the mortgage on the 10th day of May, 1883.

These are all the facts of the case that are important to be considered.

Grinnell claims that the instrument was validated by the act of the legislature passed in 1882; and especially when taken in connection with the act of 1883. The former act (Acts of 1882, p. 201,) is as follows:—" All deeds and conveyances of real estate heretofore executed and acknowledged, but attested by only one witness, shall, if valid in all other respects, be as valid and effectual as if the same had been attested by two witnesses. This act shall take effect from its passage, and shall not affect any suit now pending." The act of 1883 among other things provides that " all deeds and conveyances heretofore executed and acknowledged, but attested by only one witness, if otherwise valid, are hereby validated and confirmed to the same extent as if attested by two witnesses. This act shall take effect from its passage, and shall not affect any suit now pending."

The statute which authorizes the mortgage of certain personal property in certain cases without change of possession (Gen. Statutes, p. 359, sec. 7,) is as follows:—" When any manufacturing or mechanical establishment, together with the machinery, engines or implements situated and used therein; or any printing, publishing or engraving establishment, together with the machinery, engines, implements, cases, types, cuts, or plates situated and used therein; or

Morris v. Grinnell.

any dwelling house, together with the household furniture belonging to its owner, and used therein by him in house-keeping; or any building containing hay, together with such hay; or any of the personal property above mentioned, without the real estate in which the same is situated or used—shall be mortgaged by a deed containing a condition of defeasance and a particular description of such personal property, executed, acknowledged and recorded as mortgages of lands, the retention by the mortgagor of the possession of such personal property shall not impair the title of the mortgagee."

It is easy to see that the statute treats personal property of the character of that described in this statute, as real estate, so far as mortgages of it are concerned. The statute refers to mortgages of real estate, and declares that if mortgages of personal property under this statute are executed, acknowledged and recorded in like manner, they shall be valid. Hence if a statute had subsequently been passed increasing or diminishing the number of witnesses required to mortgages of real estate, the requisite number of witnesses to mortgages of this description would at once be changed in like manner. Therefore the statute authorizing such a mortgage is to be taken in connection with the statute requiring two witnesses to mortgages of real estate. As the greater changes, so does the less. But the statute of 1882 confirms certain defective deeds under the greater; does it not virtually do the same under the less? Personal property of this description is different from other personal property. Manufacturing and mechanical establishments must have proper machinery and tools. The real estate alone is useless for the purpose. By the common law the personal property could not be mortgaged without delivering possession of it to the mortgagee. This would destroy the mortgagor's manufacturing or mechanical business and cause his establishment to remain idle. Consequently, to enable the mortgagor to run his works and at the same time to give security on the machinery and tools, this statute was passed, which treats the real estate and personal property as all real estate

for the purpose, and authorizes both to be jointly mortgaged, or the personalty alone, without delivering possession. Surely it would be no great extension of a statute confirming defective mortgages of real estate, to hold that a like defective mortgage of this description came within its provisions. Suppose the defective mortgage in this case covered the real estate as well as the machinery and tools; the act of 1882, manifestly, would cure the defect so far as the realty was concerned. But would it not likewise in regard to the personalty? The law authorized both properties to be joined in the mortgage. Both are equally within the mischief the confirming act was intended to remedy; and can it for one moment be supposed, that the legislature intended to confirm a part and not the whole; and especially, as we have said, when the law treats personal property as real estate for the purpose of giving security?

The law in relation to the extension of the literal language of remedial statutes, so as to bring certain cases within its provisions which are clearly within the mischief the statute was intended to remedy, is settled by a long line of decisions in this state and elsewhere. The considerations which have led to these decisions have been the old law, the mischief resulting from its omissions, and the remedy to be applied to cure the mischief.

Coke (Lit., 24 b,) says:—" By an equitable construction, a case not within the letter of a statute is sometimes holden to be within its meaning, because it is within the mischief for which a remedy is provided. The reason of such construction is, that the law-makers could not set down every case in express terms." In Wolcott v. Pond, 19 Conn., 604, the court say:—" In construing a remedial statute of this character, having for its object the promotion of such important and beneficial public objects, we feel bound to give it a large construction for the purpose of furthering these objects, even though the language of the statute is critically less exact than it should be, provided we can do so, as we doubt not we can in this case, without doing absolute violence to its terms."

In Potter's Dwarris on Statutes, p. 244, the author, after an exhaustive examination of the subject, says:—" Whatever doubts may be entertained of the propriety of extending the words of statutes by equitable construction to embrace other cases, conveyances, times, places, persons and things, besides those contained and expressly mentioned in the act, there can be no question but that the words of a remedial statute are to be construed largely beneficially, so as to suppress the mischief and advance the remedy. It is by no means un-usual to extend the enacting words beyond their natural import and effect, in order to include cases within the same mischief."

The application of these authorities to the statute of 1882 is obvious. The mischief to be remedied was, that under the statutes regulating the execution of deeds, (which, to be valid against third persons, required a record showing upon its face that the deed had been attested by two witnesses,) a deed, otherwise valid, might disappoint the intent of the parties by the accident or mistake of being attested by one witness only, and a great wrong thereby be done to one who had in good faith parted with his money in the belief that he had a valid deed.

The remedy intended to be provided by the statute of 1882, was an enactment that all deeds theretofore executed, which were invalid by reason of such defect, should be as valid as if the same had been attested by two witnesses. It must be presumed that the legislature supposed that they were providing a remedy in all cases of the kind, where the hardship was equal.

We think the case under consideration is clearly within the mischief intended to be remedied by the act of 1882; and that a liberal construction of that enactment brings the case within its provisions.

The view we have taken of the act of 1882 is strongly supported by the act of 1883. This enactment clearly shows that it was by an oversight that the statute of 1882 was not made to cover a case of this character in express terms. It

was so done, by this act, as soon as an opportunity occurred after the discovery of the defect in the former statute.

There is error in the judgment rendered in the case of *Grinnell* v. *The Wetmore Machine Company*, and it is therefore reversed. There is also error in the judgment rendered in the case of *Morris, Trustee,* v. *Grinnell,* and it is likewise reversed.

In this opinion the other judges concurred.